**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-CR-01341-001MGL** |
| | ) | |
| **JONATHAN ANDREW FELKEL** | ) | |
| | ) | |

<u>**UNITED STATES' SENTENCING MEMORADUM**</u>

The United States of America, by counsel, files its memorandum in support of sentencing Defendant Jonathan Andrew Felkel, which is scheduled for July 16, 2026. The United States does not currently plan to put on any witnesses at the hearing. The United States concurs with the conclusion in the PSR that the correctly calculated offense level is 19 under the sentencing guidelines, which has a corresponding sentencing range of 30-37 months. In the plea agreement, however, the parties have agreed to a range of 96-108 months. As set forth below, the United States submits that a sentence of 108 months is appropriate and sufficient, but not greater than necessary, to accomplish the statutory purposes of sentencing, in light of the Defendant's conduct, his use of a firearm, his plea agreement, and the sentencing factors under 18 U.S.C. § 3553(a).

**FACTUAL BACKGROUND**

On the morning of July 17, 2025, Defendant Jonathan Andrew Felkel used and threatened to use force, to willfully intimidate and interfere with, and attempt to intimidate and interfere with, J.M., because of J.M.'s race and because J.M. was asserting his housing rights in the Spring Valley community, where both the Defendant and J.M. were residing. Specifically, Felkel fired a gun

1

into the air and shouted, "You better run, boy!" at J.M., a Black man, who was at the community gate waiting for a ride to work – a place he waited every morning. The gun the Defendant fired was a Remington Model 7400, 30-06 caliber Springfield semitauonic rifle with magazine and attached optic and sling (Serial No. B8039878). The Defendant engaged in this conduct because he believed that there was a conspiracy of Black people committing crimes in his community and he further believed that J.M. – who was simply trying to get to his job with the City of Columbia – may be a member of that conspiracy due to J.M.'s race. The Defendant later admitted to law enforcement that, in firing his gun and shouting at J.M., he had hoped to convey to J.M. "leave [the neighborhood], get from around here," and that J.M. "[didn't] need to be around this area." Felkel further admitted to law enforcement that he thought white people should round up all Black people, take them to a field, and "get rid of them." Finally, the Defendant told law enforcement officers that he intentionally referred to J.M. as a "boy," even though he knew J.M. was older than him. The evidence thus proved that the Defendant fired the shot and shouted at J.M. to intimidate him and other Black people from participating, without discrimination on account of race or color, in the selling, purchasing, renting, financing, occupying or contracting or negotiating for the sale, purchase, rental, financing, or occupation of any dwelling in the Spring Valley residential community of Columbia, South Carolina.

On December 17, 2025, the Defendant was indicted on two counts. Count I charged the Defendant with a violation of 42 U.S.C. § 3631(b), Interference in Federal Housing Rights, and Count II charged the Defendant with a violation of 18 U.S.C. § 924(c), Use of a Firearm in the Commission of a Violent Crime. On March 19, 2026, pursuant to a plea agreement, the Defendant pleaded guilty to Count I of the Indictment.

**DETERMINING THE SENTENCE TO BE IMPOSED**

Under 18 U.S.C. § 3553(a)(2), the district court must impose a sentence "sufficient, but not greater than necessary, to comply" with the four purposes of sentencing—just punishment, adequate deterrence, protection of the public, and rehabilitation through training or treatment. 18 U.S.C. § 3553(a)(2). To achieve that purpose, a district court must weigh the seven factors listed in § 3553(a)(1) through (a)(7). *Rita v. United States*, 551 U.S. 338, 347-48 (2007).

**ANALYSIS**

**A.  The nature and circumstances of the offense warrant a 108-month sentence.**

The Defendant's conduct was serious, dangerous, and offensive, and it warrants a correspondingly serious sentence. The Defendant, armed with a rifle, left his home looking for people of color. When the Defendant came upon victim J.M., who was simply waiting at the neighborhood gate for a ride to work, the Defendant fired his firearm and shouted a racial slur at the victim – all merely because of the color of J.M.'s skin. The Defendant has since admitted that he originally intended to fatally shoot at J.M. and kill him but instead chose to fire a warning shot. The Defendant's actions that day terrified J.M., who fled across the street, called his fiancée, and checked himself for gunshot wounds.

One year later, the defendant's actions continue to impact J.M. and his family. Out of fear, J.M. has since changed how he is picked up for work, and his fiancée and daughters no longer spend time walking in their neighborhood. The Defendant's actions have forever disrupted the lives of J.M. and his family, and of the Spring Valley community.

**B.  The history and characteristics of the defendant warrants a 108-month sentence.**

The Defendant's history of drug abuse, admitted racial bias, and willingness to use a firearm, support a 108-month sentence. In addition, as noted in the PSR, the Defendant has also

3

suffered from mental health issues, for which he should receive treatment. However, the Defendant's history of mental health issues should not warrant a sentence less than 108 months. Indeed, as the Fourth Circuit Court of Appeals recently explained in *United States v. Hudak*:

> A criminal defendant may violently attack his neighbor *both* because of the neighbor's race *and* because the defendant suffers from a mental illness that makes it challenging for him to control his behavior. Indeed, the very act of violently attacking one's neighbor suggests that the defendant is not mentally sound. In most cases short of insanity, then, mental health evidence is besides the point… Congress enacted these statutes in the 1960s "against a background of racial violence." *Johnson v. Mississippi*, 421 U.S. 213, 225, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975). Then, as now, much of the racial violence plaguing our country was committed by mentally disturbed people.

*United States v. Hudak*, 156 F.4th 405, 411 (4th Cir. 2025).

### C. A 108-month sentence is necessary to protect the public from future crimes of the Defendant.

According to the Defendant's mother, the Defendant sat outside his home for multiple days prior to this incident armed with a firearm for what he described to her as "protection." On the morning of July 17, 2025, the Defendant left his home armed with a firearm looking for Black people near his community, as he believed Black people were committing crimes. As noted above, the Defendant admitted to law enforcement officers that he originally wished to shoot J.M. and kill him. When law enforcement officers arrived at the Defendant's home to speak with him, he came down the stairs armed with a firearm. Given the Defendant's beliefs and his inclination to use firearms when threatened, the United States submits that a sentence at the upper range of the plea agreement is necessary to protect the public from future crimes that may be committed by the Defendant.

### D. A 108-month sentence will reflect the seriousness of the offense, respect for the law, provide just punishment, protect the public, and provide adequate deterrence.

A 108-month sentence, which is at the top of the guidelines range the parties agreed to in

the plea agreement, would reflect the seriousness of the Defendant's offense, as detailed above. It would also protect other people of color by sending a clear message to anyone who might consider similar conduct that such action will result in serious consequences. In *Hudak*, the Fourth Circuit explained that the harm of racially-motivated crimes "lay not only in the injuries inflicted on [the victims], but in the lost safety and dignity of all members of the targeted groups. In [the Defendant's] balled fists and combat boots lay a message: you are not welcome here." *Hudak*, 156 F.4th 405, 412–13 (4th Cir. 2025). The Fourth Circuit continued:

> In [the Defendant's] arrest and conviction, however, we find a different message. Blackstone reminds us that "among crimes of different natures those should be most severely punished, which are the most destructive of the public safety and happiness." 4 William Blackstone, Commentaries *16. Congress acted on this principle by passing federal laws "directed at crimes of racial violence." *Johnson*, 421 U.S. at 226, 95 S.Ct. 1591.

*Id.*

**E. The need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner warrants the sentence recommended by the United States.**

As detailed in the PSR, the Defendant has a history of mental health conditions and would benefit from further mental health treatment. Specifically, the Defendant has a history of attention-deficit hyperactive disorder, has been diagnosed with anxiety and depression, and has a history of trauma. Such treatment can be provided while in custody of the Bureau of Prisons. The United States has been in contact with the Bureau of Prisons, and they have recommended that the Court designate the Defendant to the Federal Correctional Institution at Butner, North Carolina, for the Defendant to be provided the strongest possible mental health treatment. The United States submits that a sentence of 108 months would provide time for the Defendant to receive this necessary mental health treatment.

**F. Sentencing the Defendant to 108 months will not create a disparity among similarly situated defendants and is otherwise warranted given the Defendant's conduct.**

The Defendant was indicted on two counts: Count I, the charge to which he has pled, and Count II, a violation of 18 U.S.C. § 924(c), which, if convicted would have entailed a mandatory ten-year consecutive sentence. The Defendant would be facing at least 120 month absent the plea agreement in this case.

During his plea hearing, the Defendant admitted to using and firing a firearm in the commission of this offense. Given the Defendant's use of a firearm, a 108-month sentence in this case would be the most in line with the sentences of other defendants who have accepted responsibility for similar conduct. *See, e.g.*, *United States v. Howald*, 104 F.4th 732, 736 (9th Cir.), *cert. denied,* 145 S. Ct. 781, 220 L. Ed. 2d 279 (2024) (defendant "received a sentence of 96 months' imprisonment on the hate crime charge…and 120 months' imprisonment on the § 924(c)(1)(A) charge (to run consecutive to the hate crime sentence…" after firing multiple shots at a neighbor's home because of her sexual orientation); *United States v. Pospisil*, 186 F.3d 1023, 1027 (8th Cir. 1999) (defendant sentenced to 144 months' imprisonment following conviction for conspiring to burn a cross on a Black neighbor's lawn while firing several shots into the air,); *United States v. Whittington*, No. 115CR00265DADBAM1, 2022 WL 3587566, at *1 (E.D. Cal. Aug. 22, 2022) (defendant sentenced to a "60 month term of imprisonment on Counts One, Three, and Four, to run concurrently with one another, and a mandatory consecutive term of 120 months' imprisonment on [the 924(c) charge], for total prison term of 180 months," following conviction for firing a shotgun at a Latino neighbor in order to intimidate him, as well as obstruction offense). Accordingly, this sentence would not create a sentencing disparity.

6

**CONCLUSION**

The Defendant fired a rifle and shouted a slur at his neighbor because of that neighbor's race. The Defendant's actions were an attempt to interfere with the victim's federal housing right to participate, without discrimination on account of his race, in the occupation of a home in the Spring Valley community, and they caused lasting trauma to J.M., his family, and his community. The United States submits that a sentence of 108 months of incarceration, followed by three years of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing outlined in 18 U.S.C. § 3553(a). The United States also requests that the Court order the Defendant to pay a $100.00 special assessment.

Respectfully submitted,

Bryan P. Stirling
United States Attorney

Date:   July 14, 2026          By:          /s/ *Elle Klein*
Elle E. Klein (ID# 12941)
Lamar J. Fyall (ID# 13629)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.: (803) 929-3000
Fax: (803) 929-3135
Email: elle.klein@usdoj.gov

Harmeet K. Dhillon
Assistant Attorney General

7

Civil Rights Division

By: _____/s/ *Sarah Armstrong*___
Sarah Armstrong, MA Bar No. 714237
Trial Attorney
Criminal Section
950 Pennsylvania Ave, NW
Washington, DC 20530
Sarah.armstrong@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-CR-01341-001MGL** |
| | ) | |
| **JONATHAN ANDREW FELKEL** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I certify that on the above referenced date, I electronically filed the foregoing United States'

Sentencing Memorandum with the Clerk of the Court and sent a copy to counsel of record.

*s/   Sarah Armstrong*
Sarah Armstrong
Trial Attorney

9